IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) UNITED STATES FOR THE USE AND BENEFIT OF JOHNSON ROOFING, INC.<br>Plaintiff,<br><br>VS.<br><br>(1) Pacific Tech Construction, Inc.,<br>(2) Westchester Fire Insurance Company and<br>(3) Federal Insurance Company,<br>Defendants. | CIVIL ACTION NO. CIV-13-1220-C |

### JOHNSON ROOFING, INC.'S ORIGINAL COMPLAINT

Plaintiff, the United States of America for the use and benefit of Plaintiff, Johnson Roofing, Inc., sometimes referred to herein as ("Johnson" or "Plaintiff"), for its claims against Pacific Tech Construction, Inc. ("Pacific Tech"), Westchester Fire Insurance Company ("Westchester") and Federal Insurance Company ("Federal"), collectively sometimes referred to as ("Defendants") states as follows:

### JURISDICTION AND VENUE

1.      Plaintiff submits that the main action asserted hereunder arises under 40 U.S.C. §3131 to §3133, commonly known as the Miller Act, which confers upon this Court subject matter jurisdiction under 28 U.S.C. §1331 as an action arising under the laws of the United States.

2. Plaintiff is seeking funds in the action against a payment bond provided for the benefit and protection of subcontractors that provided labor and materials for a construction project located at Tinker Air Force Base, Oklahoma.

3. Plaintiff submits that supplemental jurisdiction exists as to the underlying breach of contract, subcontractor's bond, attorney fees, interest and quantum meruit claims alleged by Plaintiff against Pacific Tech and Westchester pursuant to 28 U.S.C. §1367(a). Plaintiff joins and invokes the Court's pendent and supplemental jurisdiction as to any claim or causes of action that are not subject to the Miller Act. Any and all claims found pendent are joined herein as being derived from a common nucleus of operative facts of the Miller Act claim stated herein.

4. Alternatively, Plaintiff avers that the Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

5. Venue is proper in the Western District of Oklahoma pursuant to 40 U.S.C. §3133 because it is the federal district court in whose district the contract at issue was performed. Specifically, the underlying contract between Johnson Roofing and Pacific Tech was performed at Tinker Air Force Base, Midwest City, Oklahoma.

6. In support of venue in this district court, Johnson avers that it performed work and provided labor and materials to Pacific Tech for the subject federal project located at Tinker Air Force Base, Oklahoma.

## II.

## PARTIES

7.  Johnson Roofing, Inc. is a Texas corporation with its principal place of business at 574 Youngblood Road, Waco, Texas 76706.

8.  Upon information and belief, Defendant Pacific Tech Construction, Inc. (hereinafter referred to as "Pacific Tech"), is a Washington Corporation with its principal place of business at 1302 Walnut Street, Kelso, Washington, 98626. Pacific Tech's registered agent for service of process is Kevin D. Rahn, 1315 14th Avenue, Longview, Washington 98632.

9.  Upon information and belief, Defendant Federal Insurance Company ("Federal") is a foreign insurance company authorized to conduct business in the State of Oklahoma. Federal can be served by serving the Oklahoma Insurance Commissioner.

10. Upon information and belief, Defendant Westchester Fire Insurance Company ("Westchester") is a foreign insurance company authorized to conduct business in the State of Oklahoma. Westchester can be served by serving the Oklahoma Insurance Commissioner.

## III.

## RELEVANT BACKGROUND

11. This lawsuit concerns a construction contract for a repair project located at Tinker Air Force Base, Oklahoma known as "Repair RAC-1 Roof B416 DLA Warehouse, Tinker AFB, Midwest City, OK." (hereinafter referred to as the "Project").

12. The prime contract between Sauer and the USA is identified as Contract No. 01-1586-002B-2001 (the "Prime Contract").

13. Sauer, Inc. entered into a Subcontract with Pacific Tech to perform a portion of the Prime Contract including the repair and replacement of the Project's roofs.

14. On or about December 1, 2011, Pacific Tech subcontracted with Johnson Roofing to perform part of its Subcontract work (the "Johnson Subcontract"), including Roof and Deck Insulation and Built-Up Asphalt Roofing.

15. Under the Johnson Subcontract, Pacific Tech originally agreed to pay Johnson Roofing $1,270,412.00.

16. The parties subsequently modified the Johnson Subcontract in writing to provide an incentive to Johnson Roofing under which Pacific Tech would pass cost savings achieved by Johnson Roofing with respect to use of construction materials (the "Material Incentive" clause).

17. In accordance with section 3133a of Title 40 of the United States Code, Sauer, Inc. as principal and Federal as surety, executed a standard government form payment bond to USA whereby they bound themselves, jointly and severally, to pay unpaid subcontractors.

18. The bond was accepted by the USA and upon such acceptance, the Prime Contract for the Project at Tinker Air Force Based was entered into.

19. Pacific Tech as Principal, Westchester as surety and Sauer as obligee, entered into a subcontract payment bond no. K08299444 for the installation and labor for a new roof and all components at the Project (the "Subcontract Payment Bond").

20. The Subcontract Payment Bond was conditioned that if the Principal shall promptly make payment to all Claimants then the surety obligation shall be void; otherwise it remained in full force and effect.

21. Both Pacific Tech and Johnson performed roof related work at the Project. Generally, Pacific Tech repaired, replaced and installed the underlying roof support system, constructed roof deck and parapet walls. Johnson installed roof and deck insulation, certain flashing and sheet metal components and built up asphalt roofing. Johnson constructed its improvements on top of the underlying support system and deck constructed by Pacific Tech.

22. Johnson subcontracted with Crawford Roofing, Inc., ("Crawford") located in Chickasha, Oklahoma to provide labor and some supervision under Johnson's Subcontract. Crawford is not a party to this lawsuit.

23. Johnson commenced work and diligently performed the same at the Project. However, Johnson's performance and efficiency was negatively impacted by Pacific Tech in several ways. These included, but were not limited to, permitting moisture to infiltrate the roof system; poorly constructing the roof's support system; failing to timely supply needed materials to Johnson (including but not limited to propane and taper insulation board); placing arbitrary restrictions on the hours Johnson could start work; restricting Johnson's supervisors access to the Project; failing to provide adequate equipment and equipment operators to lift materials from the ground to the roof; and suspending the Project including Johnson's work.

24. Despite Pacific Tech's actions, Johnson continued to perform its subcontract work. On or about October 19, 2012, a meeting occurred between representatives from Pacific Tech, Sauer, Johnson and the United States Army Corps of Engineers ("Corps") concerning a roofing inspection conducted by Johns Manville.

25. Johns Manville manufactured and supplied the roofing materials to Johnson for the Project and was required to provide a manufacturer's warranty for these materials.

26. During this October 19, 2012 meeting the Corps identified only minor "punchlist" items within the scope of Johnson's subcontract that would be corrected when the final roof layer (the cap sheet) was installed.

27. By letter dated November 2, 2012, Pacific Tech notified Johnson that it was terminating a portion of the Johnson subcontract for convenience, and not default. Specifically, Pacific Tech deleted areas referred to as H and J at the Project from Johnson's subcontract.

28. At the time Pacific Tech published its November 2, 2012 letter, Johnson had not materially breached the Johnson's subcontract. Johnson continued performing its remaining subcontract work following receipt of Pacific Tech's November 2, 2012, "Termination for Convenience" notice letter.

29. By letter dated November 19, 2012, Pacific Tech notified Johnson that it was terminating all work remaining in its subcontract with Pacific Tech for the Project (the "Final Termination for Convenience Notice").

30. The Final Termination for Convenience was effective November 21, 2012, and expressly stated that it was not a termination for default. In fact, at the time Pacific Tech published its November 21, 2012 termination for convenience letter, Johnson had not materially breached the Johnson subcontract, nor had Pacific Tech notified Johnson that it had materially breached the contract in any manner whatsoever. Instead, Pacific Tech wrote in its November 21, 2012 termination letter, *"We now know that it is in our best interest to remove the Work listed below from your subcontract in order to achieve a higher quality end product and a more timely completion of the remaining work. This is not a termination for default."* (Emphasis Added).

31. Despite the written reasons given by Pacific Tech for choosing to terminate Johnson for convenience, Pacific Tech terminated Johnson in bad faith, maliciously and in retaliation.

32. Pacific Tech used its own crews to demolish the Project's existing roof and install a "temporary roof." This temporary roof consisted of metal deck with cement board attached to the decking with screws. These screws were the only specified method of attaching the roof to the building. This "temporary" roof provided temporary protection for the occupied space below. By design, Pacific Tech's temporary roof became incorporated as a component part of the permanent roof system installed by Johnson. On multiple occasions during Johnson's performance, Pacific Tech left their temporary roof open, permitting water to infiltrate the occupied space below and into the roof system. These occasions included, but were not limited to, Pacific Tech leaving the roof open in advance of approaching rain storms, failing to cover and install temporary

roofing at parapet walls, and failing to timely construct and install details at the roof's leading edge.

33. Presence of water in the temporary roof was significant because the temporary roof is a component part of the closed and sealed permanent roof system. If moisture becomes trapped in the permanent roof, heating during summer months will cause the moisture to vaporize, resulting in the blistering and failure of the roof's cap sheet (the top or exterior layer of the permanent roof system).

34. Because Johnson and the Corps witnessed water infiltrating the building and Pacific Tech's temporary roof system on multiple occasions, Johnson requested that Pacific Tech acknowledge this condition before Johnson continued applying additional layers of the permanent roofing. Pacific Tech employee Lee Sykes ("Sykes") did not want Johnson to install additional roofing if a concern existed with moisture infiltration. Therefore, Sykes directed and/or approved Johnson's identification of impacted areas. Johnson metered and marked multiple locations where it detected moisture. Pacific Tech used its own meter and independently detected the presence of water in the roof system. Other stakeholders including Johns Manville and the Corps were also concerned about the presence of moisture in the roofing system. Ultimately, it took time to investigate the presence of moisture and Pacific Tech blamed Johnson for increasing its costs and causing delays.

35. In addition to raising legitimate and well founded concerns that Pacific Tech permitted water to infiltrate the roof system, Pacific Tech also terminated Johnson for convenience because Johnson refused to participate in the concealment of Pacific

Tech's defective and non-conforming work from the Corps, and because Pacific Tech believed that Johnson revealed Pacific Tech's defective work to others.

36.  As stated herein, Pacific Tech's crews installed cement boards that were incorporated into one of the first layers of the built up roof system. At the building's perimeter (referred to as the "leading edge") the Project's design required use of enhanced fastening to protect the roof against wind uplift. When Johnson suspected that Pacific Tech had not properly fastened the leading edge using an enhanced fastening and sent written notice to Pacific Tech raising this concern. Specifically, during the course of construction, Johnson relocated an asphalt supply pipe that ran from an asphalt kettle on the ground to the roof surface. A section of roofing was affected by this supply pipe due to normal spillage and asphalt spudding. In the process of relocating the asphalt supply pipe and removing this excess asphalt, Johnson discovered that the underlying cement board (installed by Pacific Tech) was not fastened or attached to the underlying deck. Because the asphalt supply pipe was located at the roof's leading edge, the unattached cement board should have been secured with *extra* fasteners. Instead, it was not fastened at all. Johns Manville and the Corps inspected construction of the leading edge and identified Pacific Tech's defective fastening work. Correction of Pacific Tech's deficient work resulted in a suspension of work and the reconstruction of "complete" but improperly constructed Pacific Tech roofing, at the building perimeter. This ostensibly caused Pacific Tech to incur delays along with additional labor and material expense to correct their own defective work.

37. In early November, Pacific Tech notified Johnson that it was partially terminating its Subcontract for convenience. Later that month, Pacific Tech terminated the balance of Johnson's subcontract. When confronted by Johnson concerning Pacific Tech's hostility towards Johnson, Pacific Tech's Project Manager Mr. Sykes accused Johnson of: (1) calling Johns Manville and exposing Pacific Tech's defective fastening work and causing the head of inspectors to tear up roofing and (2) marking areas where moisture was detected causing the Project to shut down.

38. Johnson last provided labor to the Project on November 18, 2012. Johnson last provided material to the Project on or about April 11, 2013.

39. Johnson transmitted notice of its claim on the Subcontractor Bond to Westchester, Sauer and Pacific Tech via certified mail return receipt requested on January 28, 2013.

40. Despite multiple demands, Pacific Tech as failed and refused to pay Johnson for labor and materials provided to the Project with a value totaling $400,117.14.

41. More than 90 days have expired since Johnson last performed work in connection with the claims asserted herein.

42. One (1) year has not elapsed from the date on which the last work was performed or materials were provided by Johnson for Pacific Tech on the Project.

### IV.

### CLAIMS

43. Johnson incorporates herein the allegations contained in paragraphs 1-44.

### a. Bond Claim against Federal

44. Although demand has been made upon Federal, Pacific Tech and its surety Westchester, no amounts claimed herein, or any interest thereon, have been paid to Johnson by any Defendant.

45. Johnson provided timely notice of non-payment to Federal, in accordance with the Miller Act and has otherwise complied with all rules and requirements of the Miller Act for perfecting a right of action under the bond.

46. All conditions precedent to the making of this Miller Act claim against the Federal Bond have occurred, been performed or waived. Therefore, Federal is liable to Johnson for the value of the work performed and material provided, but for which it has not been paid, in an amount totaling at least $400,117.14.

### b. Bond Claim against Westchester

47. Johnson provided timely notice of non-payment to Westchester in accordance with the terms of the Subcontractor's Bond and has otherwise complied with all rules requirements to perfecting a claim against the Subcontractor's Bond.

48. All conditions precedent to the making of this claim against the Subcontractor's Bond have occurred, been performed or waived. Therefore, Westchester is liable to Johnson for the value of the work performed and material provided, but for which it has not yet paid, in an amount totaling at least $400,117.14

### c. Breach of Contract Claims against Pacific Tech

49. Pacific Tech breached its Subcontract with Johnson when it failed and refused to timely pay Johnson for work performed and materials provided. Such breach

has resulted in damages to Johnson in an amount of at least $400,117.14, for which amount Johnson now sues.

50. In addition to the above damages, the subcontract included a payment incentive for Johnson to conserve and properly manage construction materials. During performance, Johnson was diligent in the management and use of construction materials and substantial savings in materials yields was being realized by Johnson's crews. Based upon its actual usage, as of the date Pacific Tech wrongfully terminated the Subcontract, Johnson was entitled to receive $86,036.04 under the Material Incentive clause. Johnson has demanded that Pacific Tech pay the amounts owed under the Subcontract's Material Incentive cause but Pacific Tech has refused. This refusal to pay constitutes a breach of subcontract resulting in damages to Johnson in an amount of at least $86,036.04, for which amount Johnson now sues.

51. During the course of construction Pacific Tech demanded that Johnson provide additional workforce in order to perform multiple elements of work simultaneously, instead of the systematic method being utilized by Johnson. Johnson complied with Pacific Tech's request by increasing manpower on the Project.

52. Thereafter, Pacific Tech encountered a number issues with their own non-compliant work unrelated to Johnson. In order to correct their own non-compliance, Pacific Tech forced Johnson to idle its forces for approximately fifteen days. Forcing Johnson into a standby condition without payment constituted a breach of contract that resulted in damages to Johnson which Johnson has demanded from Pacific Tech. Pacific

Tech has refused resulting in damages to in an amount of at least $41,698.90 for which Johnson now sues.

53. On numerous occasions during October through November 2012, Pacific Tech negatively impacted Johnson's productivity. These events included diverting needed roofing materials from Johnson's crews to Pacific Tech's crews, limiting the mobility and effectiveness of Johnson's Project Manager by requiring him to have an escort while on site, stocking insufficient materials onsite that restricted Johnson's daily production, failing to provide operated equipment to stock the roof with Johnson's construction materials, and forcing Johnson to stock construction materials during off hours.

54. The impacts caused by Pacific Tech to Johnson's productivity resulted in damages to Johnson totaling in excess of $23,910.09. Johnson has demanded that Pacific Tech compensate Johnson these damages but it has refused. Pacific Tech's actions that negatively impacted Johnson's productivity constitute a breach of contract resulting in damages for which Johnson now sues.

55. During October 2013, Pacific Tech provided Johnson with revised completion deadlines which it identified as being absolute. In addition, Pacific Tech continued to direct that Johnson increase its progress in order to meet the revised completion deadlines.

56. At the time Pacific Tech provided Johnson with revised completion deadlines and directed that Johnson increase its output, Johnson notified Pacific Tech in writing that its demands constituted a compensable acceleration of work and a change to

the Subcontract. Johnson accelerated its work and incurred acceleration costs totaling $31,677.00. Johnson has demanded payment from Pacific Tech for these acceleration costs but Pacific Tech has refused. Pacific Tech's failure to pay Johnson for this change constitutes a breach of Subcontract resulting in damages to Johnson totaling at least $31,677.00 for which amount Johnson now sues.

57. Under Oklahoma law, each and every contract carries an implied covenant to by the parties to act toward each other in good faith and not do anything to injure the other party's right to the fruits of the contract.

58. Pacific Tech's exercised the subcontract's termination for convenience clause in bad faith, maliciously and/or in retaliation, and wrongfully injured Johnson's right to the fruits of the subcontract. Pacific Tech's bad faith termination of the subcontract for convenience constituted a breach of subcontract under Oklahoma law.

59. Subcontractors terminated for convenience in bad faith or in retaliation on federal construction project are entitled to recover full common-law damages for breach of contract. At the time Pacific Tech wrongfully terminated Johnson "for convenience" the value of the work performed totaled $698,608.38. Of this amount, Johnson invoiced Pacific Tech $428,633.38 of which Pacific Tech paid $298,491.24 leaving an unpaid balance totaling $400,117.14 for work performed.

60. When Pacific Tech wrongfully terminated Johnson "for convenience" the unperformed portion of Johnson's subcontract totaled $571,803.70. At the time Johnson entered into the subcontract, it anticipated earning a profit totaling forty-two (42%)

percent. Therefore, Johnson's damages for lost profits on work it was prevented from completing totaled $240,157.55, for which amount it now sues.

61. All conditions precedent to recovery by Johnson on all its breach of contract claims against Pacific Tech have occurred, been performed or waived by Pacific Tech.

### d. Quantum Meruit Claims against Pacific Tech

62. Plaintiff incorporates herein the allegations contained in paragraphs 1-63.

63. Pleading in the alternative, Johnson performed labor, provided materials and services to Defendant at the request of Defendant with the reasonable expectation of receiving payment in return. In fact, Defendant knew that Johnson expected such payment and received the value and benefit for such labor, materials and services supplied by Johnson.

64. The reasonable value in and around Oklahoma County, Oklahoma for the materials, labor and services provided by Johnson, for which it has not yet been paid is at least $400,117.14. Defendant Pacific Tech will be unjustly enriched in an amount totaling at least $400,117.14 if Pacific Tech is allowed to retain the benefit of the labor, services and materials without making payment to Johnson.

65. All conditions precedent to the recovery by Johnson on its quantum meruit claim have occurred, been performed or waived by Defendant.

### e. Interest and Attorney's Fees

66. Johnson seeks and is entitled to recover its reasonable and necessary attorney fees against all Defendants, or alternatively, against Defendant Pacific Tech, in connection with the Johnson's breach of contract and quantum meruit claims.

67. Johnson further seeks and is entitled to recover pre-judgment interest in the highest amounts permitted by law, including enhanced interest as provided by the Federal Prompt Payment statute or applicable federal acquisition regulations (FARs).

## V.

## Prayer for Relief

WHEREFORE, the United States of America for the Use and Benefit of Johnson Roofing, Inc., prays that Defendants Pacific Tech Construction, Inc., Westchester Fire Insurance Company and Federal Insurance Company, be required to answer and appear herein, and that upon final judgment, Johnson Roofing have and recover the following:

a. Judgment for Johnson Roofing and against Pacific Tech for breach of contract in an amount totaling not less than $844,596.22 which includes $400,000.117.14 for unpaid work performed by Johnson Roofing, $240,157.55 for profit on unperformed work, $86,036.04 for material savings, $41,698.40 for suspension of work, $23,910.09 in damages to Johnson's productivity, $31,677.00 in damages related to acceleration and at least $21,000.00 in reasonable and necessary attorney's fees;

b. Judgment for Johnson Roofing and jointly and severally against Westchester Fire Insurance Company and Federal Insurance Company in an amount of at least $400,117.14 for Johnson Roofing's bond claims;

c.  Alternatively, judgment for Johnson Roofing and against Pacific Tech for unjust enrichment / quantum meruit, together with interest, attorney's fees and costs as alleged herein and for all such other relief as is just and equitable.

Respectfully submitted,

/s/Brigid F. Kennedy
Brigid F. Kennedy, OBA #12361
Kennedy Law Firm
1107 N.W. 26th Street
Oklahoma City, Oklahoma 73106
(405) 778-8820/ (405) 778-8822 (facsimile)
Bkennedy@kennedylawfirm.net

and

Calvin L. Cowan
Sanderford & Carroll, P.C.
2110 Birdcreek Drive
Temple, Texas 76502
(254) 773-8311/ (254) 773-9175 (facsimile)
cal@txconstructionlaw.com
*Attorneys for Plaintiff,*
*Johnson Roofing, Inc.*

Jury Trial Demanded
Attorneys Lien Claimed